# Waller, &c. *vs* Tate, Buckner, &c. and Buckner *vs* Waller, &c.

ERROR TO THE MONTGOMERY CIRCUIT.

*Mortgages.    Assignments of mortgages.    Purchaser.*

JUDGE MARSHALL delivered the opinion of the Court.

ON the 1st day of June, 1827, G. W. Tate mortgaged to William S. Waller a tract of 190 acres of land in Montgomery county, to secure three notes for upwards of $500 each, payable to said Waller. These notes having been afterwards assigned to the President, Directors, and Company of the Bank of the United States, as collateral security for a larger debt due to them by Waller, judgments were obtained in the United States Circuit Court for Kentucky, and executions issued thereon in favor of the Bank, were levied on the same tract of land which had been mortgaged to Waller. On the 4th of April, 1831, the land was sold by the Marshal, under writs of *venditioni exponas*, and R. Morgan became the purchaser at the

COVENANT.

Case 105.

June 8.
Case stated.

|4bm529|
|118    50|

price of $1 75 cents per acre, the net amount of which was credited on two of the executions, and shortly afterwards the Marshal conveyed the land to Morgan, who, in November, 1834, sold and conveyed 173 acres of it to William S. Buckner, at the price of eight dollars per acre. In 1837, William S. Waller filed his bill against Tate, Morgan, and Buckner, to sell the land for the payment of the mortgage debt, of which nothing seems to have been made except about $330, credited on the executions; and in an amended bill, filed in March, 1838, M. T. Scott and Farmer Dewees were made co-complainants, on the allegation that they were the assignees of the judgments which had been obtained by the Bank, and that they and Waller were alone interested in the debt and mortgage.

Buckner, by his answer, claims to be protected as an innocent purchaser, for a valuable consideration, ignorant, in fact, that there had been any mortgage on the land, and entitled at any rate to rely upon the purchase made by his vendor under an execution for the mortgage debt, and contends that as the mortgagee had the land sold under execution for the mortgage debt, and the proceeds were, in fact, applied towards its satisfaction, it cannot be further proceeded against under the mortgage, for the same debt. A decree was rendered directing the land to be sold for the satisfaction of the mortgage debt, after first paying from the proceeds, to William S. Buckner, the amount bid for his portion of the land at the execution sale.

To reverse this decree the complainants prosecute a writ of error, complaining that any thing was allowed to Buckner; that a priority was given to him, and that he was not held accountable for the rent of the land while in his possession, proved to be worth $50 per annum, and for a small sum received by him for rail timber sold from it. On the other hand it is alledged, in cross errors assigned by Buckner, that the bill should have been dismissed as to him, or at any rate, that the price which he paid for the land should be secured to him out of the proceeds of any sale to be made under the mortgage.

It has been repeatedly decided by this Court, and must be considered as settled, that the equity of redemption or the mortgagor's interest, as distinct from the entire title, is not subject to levy and sale under an execution for the debt secured by the mortgage: *Going's executors* vs *Shreve*, (7 *Dana*, 64;) *Swigert and Shreve* vs *Thomas*, (*Same*, 220;) *Bronson* vs *Robinson*, (4 *B. Monroe*, 142.) And in this case there is no evidence that any thing else but the entire title was levied on or attempted to be sold or conveyed. The written evidences of the sale, (and there are no others,) make no reference to any mortgage or equity of redemption. but show a sale of the land in the usual terms. Here then was one sale of the land for the mortgage debt, and an application of the proceeds of the sale towards the payment of that debt. Such a sale could only be effectual by the actual or presumed surrender of the mortgage title, for it is only thus that the mortgagor has a title subject to levy and sale. When, therefore, the mortgagee either directs such a sale, or knowingly sanctions it by receiving the proceeds and not objecting to or quashing the sale, this conduct necessarily implies such an admission of title in the mortgagor, and such an abandonment of any inconsistent title in himself, as must preclude him in a Court of Equity at least from afterwards setting up the mortgage title against the purchaser, whose money he has received and applied to the mortgaged debt, unless he might be permitted to do so upon grounds which would authorize a rescission of the sale, which, of course, would be followed by such an equitable adjustment as would place the parties as nearly as might be in *statu quo*. And if by reason of such acquiescence on the part of the mortgagee, a third person, trusting to the title acquired under such a sale, and to the sanction which the lapse of three or four years, without objection, may have given to it, should purchase the land for a valuable consideration. As this second purchaser would have equal, and indeed from the subsequent acquiesence, greater right than the first to rely on the title acquired by the execution sale, it would seem not only that the mortgagee could not afterwards set up his mortgage title against him, but upon grounds of equity which would

WALLER, &c.
*vs*
TATE, &c.

Equity of redemption in mortgaged property, is not subject to sale under execution for the debt secured by the mortgage.

authorize a rescission of the first sale, but that if the second purchaser were in fact ignorant of those equitable grounds when he purchased, his interest ought not to be in any manner affected by their subsequent assertion, for he and not the mortgagee, should derive advantage from the mortgagee's laches, or from his ignorance of what he ought to have known and would be presumed to have known. It is difficult, therefore, in such a case, to find any just principle which would allow the assertion of the mortgage title against the second purchaser. But it is a plain dictate of equity and reason, that if under such circumstances, the mortgagee could be allowed any further benefit from his mortgage title, it could not be at the expense of actual loss to the second purchaser, but only upon the condition of yielding to him a perfect indemnity, so far as the mortgaged property would furnish it, for all his advances made in good faith, under a reliance upon the execution sale. For although the mortgagee may not have received all of these advances towards the payment of his mortgage debt, he has, in effect, induced these expenditures by selling the mortgaged property, or by allowing it to be sold for that debt, and by failing to quash the sale or otherwise assert his title. He has, in effect, encouraged the second purchaser to buy; and we repeat, the difficulty is in finding out any ground on which he could be allowed afterwards to claim a resale of the property for the discharge of the same debt, rather than in determining that if allowed to do so at all it can only be upon the terms of first yielding an indemnity to the second purchaser.

These principles would be directly and clearly applicable to the case if Waller had retained his interest in the mortgage debt, and had been the plaintiff in the executions under which the land was sold. And altho' the assignment of the mortgage debt to the bank may not have actually carried with it the legal title of the mortgagee, yet as it carried all his interest in the mortgage, as security for the debt, with a perfect right to control the debt and the mortgage, as a security for it, we do not perceive why the same principles do not apply to prevent or qualify any equitable remedy upon the mortgage, in behalf either of

*The transfer of a debt is, in equity, a transfer of all securities for such debt.*

the Bank or of her assignees, Scott and Dewees, Nor do we perceive any thing in the interest or attitude of Waller which should give a different aspect to the case, or relieve the right now asserted under the mortgage from any of the difficulties which would have attached to it from the conduct and acquiescence of the Bank, if she or her assignees alone had been interested and sole complainants; for whatever might have been the case if Waller had had an interest in the debt beyond that of the Bank, as if his debt to the Bank had been less than the amount of the notes assigned, yet as his interest seems only to be, in effect, a responsibility as assignor, and so far as appears, he can suffer no injury from the loss of the whole or any part of the debt by the default or misman_ agement of the Bank with regard to the security, he is in truth only a nominal party, and that the suit is essentially the suit of Scott and Dewees alone.

What then is the equitable ground shown for claiming a re-sale of the land, and in effect, a rescission of the execution sale, and the subsequent sale to Buckner? It is alledged, in an amended bill, that the purchase, by Mor_ gan, under the execution, was made for the benefit of Tate, the debtor, and the payment made with his money, and that the purchase, by Buckner, was made from Tate, and his payments made to Tate, with a knowledge of the facts, though the title was received from Morgan. But these allegations, so far as they affect Buckner, are all denied by him, and there is no proof on the subject, except such as may be founded on inferences to be drawn from a comparison of the price paid for the land under the execution sale, and that paid near four years after_ wards, by Buckner; and from the fact which, though not certainly appearing, seems probable that Tate remain_ ed in possession until the sale to Buckner. From this comparison it would appear that the land had been sold at a great sacrifice, under the execution, and it is possi_ ble that this may have arisen in part from the embarrass_ ed condition of the title, the land being under mortgage for more than its value, and there being, perhaps, some uncertainty as to the effect which the mortgage might have. But if the sacrifice arose from this cause, it was

Where the as_ signee of a debt secured by mort_ gage, caused the mortgaged prop_ erty to be sold to pay · the same debt, and it was acquiesced in for 4 years, by cred_ itor—*Held* that a purchaser from the purchaser at the execution sale, ignorant of the fact of mort_ gage, &c. should not be disturbed in his purchase by mortgagee or his assignee.

occasioned by the conduct of the Bank in causing or suffering the land to be sold without a proper surrender or release from the mortgagee, subjecting the land to the execution. And besides, as not only the Bank but the debtor acquiesced in the sacrifice, from whatever cause it arose, the subsequent purchaser might well rely upon the sale, after it had remained undisturbed and unquestioned by either party for near four years. And even if the circumstances furnish ground for infering that Tate derived a benefit from the sacrifice at the execution sale, by being allowed by the purchaser to receive the advanced price upon the subsequent sale, this circumstance does not avoid the first sale, nor furnish ground for avoiding it, against the second purchaser, unless, as alledged, Tate's money was paid on the first sale, and that fact was known to Buckner. But such knowledge is denied and is not proved. Mere inadequacy of price, without reference to the causes which may have produced it, is not a ground for quashing or rescinding a sale, and even though there be fraud, this will not avail against a subsequent purchase for valuable consideration, without notice of the fraud, though he have notice of the inadequacy of the consideration.

*Mere inadequacy of price not a ground to set aside a sale under execution.*

On the whole case, therefore, the only ground on which any equitable consideration can arise in support of the remedy now sought by the complainant, is the fact that there was a sacrifice, and that it may possibly have been produced by the embarrassed or uncertain condition of the title, and from the inability of the Bank to make an actual transfer of the legal title of the mortgagee. But this ground is not alledged nor hinted at in the pleadings. And as we think it is generally understood that the holder of the mortgage debt has virtually the control of the mortgage, and stands in the place of the mortgagee, it might be a gratuitous and unauthorized presumption to say that a contrary supposition existed in this case and produced a sacrifice of the land.

Without determining that this consideration alone, if it could be applied to the case, would authorize even the limited and qualified relief which has been indicated as being, under certain circumstances, allowable, we are of

opinion that, as to the land purchased by Buckner, there is no equitable ground for disturbing his purchase, and, therefore, that the bill, as to him and as to that portion of the mortgaged land, should have been dismissed.

Wherefore the decree is reversed, on the cross errors of Buckner, and the cause remanded with directions to dismiss the bill as to Wm. S. Buckner, and the land conveyed to him by R. Morgan.

*Apperson* for plaintiff: *H. Daniel* for defendant.