## Pineville Steam Laundry v. Phillips.

(Decided May 22, 1934.)

JAMES H. JEFFRIES and CLEON K. CALVERT for appellant.
W. L. HAMMOND and N. R. PATTERSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

The appellee, John L. Phillips, sued the appellant, a corporation, to recover the net sum of $6,368.60 with interest, on three notes which had been assigned to him by the payees named therein, and for the enforcement of a mortgage. The case was submitted on the pleadings and exhibits and judgment was rendered for the plaintiff.

We give a summary of the material facts disclosed: The corporation's stock was owned by G. C. May and T. F. Gibson. If there was any corporate organization, it was a very loose one. The company had become indebted to two banks and its stockholders likewise owed a considerable amount, to secure which their stock had been pledged as collateral. Mrs. W. R. Wood was the general manager of the business. Two of the notes involved were signed by May as vice president, and one by Mrs. Wood as general manager. All were renewals of other notes and that which was signed by Mrs. Wood and here questioned was a renewal of a note which had been duly executed for the company by one or the other of its principal officers. It is alleged that May and Gibson had lost interest in the business, apparently because of its and their financial distress. At any rate, in

October, 1930, the banks, R. E. Lawson an individual creditor of Gibson, Gibson himself, and his trustee in bankruptcy, filed suit against the laundry company setting up the situation, charging that its assets were being depreciated and its income diverted, that Gibson and May were insolvent, and asking for the appointment of a receiver. On December 26, 1930, the parties to that suit, as well as May individually, entered into a written agreement that a committee of three should be named to take charge of the business and apply the earnings to the liquidation of the debts. By this writing the committee was authorized to sell the laundry company's assets. An order was entered in the case reciting the terms of that agreement, the appointment of the committee, and that it had been made to appear that they could borrow enough money to liquidate the debts by pledging and putting the company's property in lien. The court authorized the committee to mortgage the property to the plaintiff in this suit, John L. Phillips, to secure him in a loan of $7,671, and the case was ordered stricken from the docket.

Pursuant to that authority of the court, on March 13, 1931, the committee executed a mortgage on the property to Phillips. Instead of executing new evidences of the obligations, the three notes were on the same day assigned without recourse to Phillips who had paid the holders of them.

In this suit on those notes and to enforce that mortgage, the Pineville Steam Laundry set up the defenses that there was no consideration, as the debts were the personal obligations of May and Gibson, and that the notes and the mortgage were ultra vires because not made by authority of its board of directors. As to the note for $1,600 signed by Mrs. Wood, it was charged that she was only a clerical employee and was without authority to execute the company's note. A counter-claim for $1,300, which had been paid on that $1,600 note after it came into the ownership of Phillips, was asserted upon the ground of fraud and mistake. The plaintiff traversed the allegations of the answer and counterclaim and pleaded the proceedings and the order of the court in the first suit as res judicata and in bar. He also pleaded an estoppel of the company to deny Mrs. Wood's authority because the note was a renewal of one originally made by the company for a loan and she had made the note with the knowledge and author-

ity of the corporation, and also because it had ratified her acts by carrying the debt on its books as a liability and by making payments thereof aggregating $1,300. Another ground of estoppel was the solicitation, representations, and inducements of the company's officers to get the plaintiff to pay off and take over the notes. The trial court sustained both the pleas of res judicata and estoppel and rendered judgment for the plaintiff.

There is no doubt that the order in the first suit is an effectual bar to the defenses interposed in this suit. The company was a party to that first suit and had an opportunity to offer the same defenses set up in this one. It not only made no defense therein, but acknowledged the validity of these notes and consented to the order empowering the committee to carry out that to which it had previously agreed. The defense here was nothing more than an attempt to retry issues which could have been tried in the former action. No question of fact which has been once litigated or could have been litigated in a suit pending in a court of competent jurisdiction can thereafter be relitigated by the same parties or their privies. One is in privity with a party to litigation when he has succeeded to some estate or interest involved in the controversy. The derivative right of succession of interest creates a privity of estate and binds as well as inures to the benefit of one who acquires it. Between an assignor and assignee there is a privity in estate and in contract as well. The plaintiff in this action stepped into the shoes of the owners of the notes and clearly succeeded to the contract and estate represented by the obligations and the rights of the assignors determined in that suit. Louisville Gas Co. v. Kentucky Heating Co., 142 Ky. 253, 134 S. W. 205; Hopkins v. Jones, 193 Ky. 281, 235 S. W. 754; Ralph Wolff & Sons v. New Zealand Insurance Co., 248 Ky. 304, 58 S. W. (2d) 623; 50 C. J. 407, 408.

Since the plea of res judicata was a sufficient ground for denying the defenses, it does not become necessary to consider the plea of estoppel.

Although the judgment in this case directed a sale of the mortgaged property, both personal and real, by the master commissioner to satisfy the personal judgment, it went further and authorized the issuance of an execution upon the plaintiff's order and provided that if it should issue no sale should be made until the ex-

ecution was returned. The plaintiff had an execution issued and the property in lien was sold by the sheriff under it. At that sale he bought the property for more than two-thirds of its appraised value. The defendant's exceptions to that sale were overruled and an appeal is brought from that judgment also.

The appellant takes the position that a sale under execution of property in lien to satisfy the judgment is not authorized.

The import of the judgment relating to the issuance of the execution is that it should attach to property of the defendant other than that adjudged to be sold by the commissioner. That was clearly authorized. Sections 1650, 1663, Statutes. The question is whether the property in lien could be levied on and sold under execution. The appellant argues that under section 1709 of the Statutes the purchaser of the property covered by the mortgage acquired nothing more than a lien upon it. That section declares that when property of a defendant in an execution has been incumbered by a lien before that created by the execution, his interest in the property may be sold under the execution, subject to that prior incumbrance, and the purchaser shall acquire only a subordinate lien for the purchase money, with 10 per cent. interest, which lien he may enforce in a court of equity; such courts being specifically given control of property thus incumbered. In Marcum v. Thompson, 222 Ky. 702, 2 S. W. (2d) 392, there was a judicial sale to satisfy a vendor's lien. The sale bonds not having been paid, a fieri facias issued on them and the same property was sold by the sheriff thereunder. It was held that the provisions of section 1709 did not apply, since the execution had issued to satisfy the lien debt and that when the purchase money was paid the purchaser took an unincumbered title as the very purpose of the sale was to extinguish that lien. The same conclusion was reached in Moriarity v. Vessey, 69 Ky. (6 Bush) 115. At first blush these cases would seem to authorize a sale under execution in the circumstances of this case; but the distinction is that the statute authorized that action to satisfy the purchase money bonds (section 1676, Statutes; section 697, Civil Code of Practice), and the sales were not made to satisfy the lien debt in the first instance.

It is true that the statutes provide that an execu-

tion may issue upon any judgment in personam (section 1650); that a judgment in chancery for money, lands, or other specific things may be enforced by that writ (section 1663); that any legal or equitable title in land may be taken and sold under execution (section 1681); and that lands are to be thus sold after the personalty (section 1692). But those statutes and others relating to sales under executions must be read in connection with the several others providing the remedies and prescribing the methods for the judicial sale of land for the satisfaction of liens. Sections 14a-1, 1012, 2362, Statutes; and sections 692, 694, 696, 697, 699, Civil Code of Practice. There are some material conflicts in the two sets of statutes; e. g., if the sale of land be by order of court it must be upon a credit of not less than six months (section 696, Civil Code of Practice), while a sale under an execution may be upon a credit of three months (section 1674, Statutes). There is a well-recognized distinction between a sale made by a sheriff under an ordinary execution and a sale made by a commissioner subject to the orders of the court, which is pointed out in Dawson v. Litsey, 73 Ky. (10 Bush) 408; and 10 R. C. L. 1288. An execution creates a lien (section 1660, Statutes), and a sale thereunder is to satisfy that lien and none other. If the property yield a sufficient sum to satisfy the adjudicated lien, and the debt is in fact paid, the effect may be to extinguish it; but if the property bring less than the full sum it may well be doubted whether it would not be but a pro tanto satisfaction.

We quote from Jones on Mortgages, sec. 1587:

"Generally a mortgagee can not, upon a judgment recovered for the debt secured by a mortgage, levy the execution upon the mortgaged property, though it may be levied upon any other property of the debtor. Such a proceeding would amount to a foreclosure in a way not contemplated by the parties or provided for by law. The levy would therefore be ineffectual, and would leave the mortgage as it stood before, subject to redemption. The mortgagee is just where he began. The effect of the sale on the execution is to assign and not to extinguish the equity by redemption."

In Goring's Executrix v. Shreve, 37 Ky. (7 Dana) 64, the holder of a first mortgage secured a judgment

for his debt and had the land sold under execution, becoming the purchaser himself. This sale was attacked by a second mortgagee. Stating that the court had no knowledge of any respectable authority in the English courts in which it had been definitely settled that an execution sale might be made in satisfaction of a debt secured by a mortgage, and reciting reasons given by Chancellor Kent why it should not be permitted, the court said:

> "The sacrifices, mischiefs and embarrassments produced by such sales, bring us to the conclusion that they were unauthorized by the wisdom of the common law."

Nothing to the contrary being found in the current statutes, it was held that the sale under the execution was "illegal and unauthorized by law, and passed nothing to the purchaser."

That conclusion was reiterated in Swigert and Swigert & Shreve v. Thomas, 37 Ky. (7 Dana) 220; Bronston v. Robinson, 43 Ky. (4 B. Mon.) 142; and Waller v. Tate, 43 Ky. (4 B. Mon.) 529. As it was when those cases were written, nearly a hundred years ago, we find nothing in the statutes contrary to the ancient rule. Upon their authority and the reasoning thereof, it must be held that the sale involved in this case was "illegal and unauthorized."

The original judgment is affirmed, but the judgment overruling the exceptions to the report of sale filed by the sheriff is reversed, with directions to set the sale aside.

Whole court sitting.