## Akers et al. v. Kentucky Title Trust Co. et al.

Sept. 29, 1939.

James Garnett, Judge.

Wilson W. Wyatt and Peter, Heyburn, Marshall & Wyatt for appellant Frank Guthrie Akers.

Selligman, Goldsmith, Everhart & Greenbaum for appellee Kentucky Title Trust Co.

Garland R. Hubbard and John M. Scott for Jane Guthrie Beckley.

W. A. Perry warning order attorney for nonresident infants F. G. Akers, Matthew Akers and Michael Akers.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

H. F. Guthrie, prior to and at the time of his death in April, 1891, was a citizen and resident of Jefferson County, Kentucky. He owned and possessed at the time of his death property of the value of at least one-half million dollars. On the 19th day of July, 1888, he executed his will, which was duly probated following his death. By it he created a trust embracing practically all of his property and make his son-in-law, John Marshall, trustee, without bond and without requiring an inventory. He empowered his trustee to sell, exchange, invest, reinvest, and otherwise manage his property practically the same as the testator could do as its owner, but with directions as to what should be done with the income, as well as the corpus after the terms

of the trust had been complied with and it became terminated. The sole question presented for determination on this appeal relates to the right of the trustee to pay out of the corpus of the trust $200 per month as rent for a home for testator's daughter, who is the appellant, Frank Guthrie Akers, and who is now an invalid widow, near seventy years old.

The testator left surviving him his widow and his daughter as the only ones under the law who would take his property in case of intestacy, but his widow survived him only nine days, leaving a will framed somewhat like that of her husband, but with the terms of which we are not concerned in this case.

We insert the following excerpts from the will of Mr. Guthrie, which we conclude are all of it having any bearing upon the question presented for determination:

"The estate devised is for the use and benefit of my wife, Keziah J. Guthrie and my daughter, Frank Guthrie, her descendants, and my devisees as hereinafter set forth."

He then made some special provisions disposing of small amounts, none of which are involved in this case, and then directed that the trust estate created by him "shall remain undivided and continue in trust during the life of my wife, and the life of my daughter Frank Guthrie and twenty-one years after the death of my said daughter, when it shall go and vest absolutely in the children (now Mrs. Beckley and her half-brother, Akers) of my said daughter, if any there be."

He then made provision as to what should be done with the property after the death of his wife and daughter, making contingent provisions whereby they might dispose of it by last will and testament and what should be done eventually with it if they should fail to exercise that power and authority, and then prescribed that:

"Out of the net profits and income of my estate, after paying taxes, assessments, insurance and repairs, there shall be paid, annually, to my wife, during the infancy of my daughter, and to my wife and daughter, and each of them, when the latter becomes of full age, such sum or sums as may be necessary to provide for the liberal and proper support and maintenance of them, and each of them. I do not desire to limit, or name the amount which my trustee shall pay my wife and daugh-

ter but it is my wish that it shall be more than amply sufficient to maintain them in a manner suitable to their condition and estate, absorbing the whole of said net income if my trustee thinks best.

"And if at any time *it is deemed best by my trustee,* or *becomes necessary,* I direct my trustee to purchase or *provide* a suitable residence for my daughter, and pay out of my estate all taxes, insurance and repairs that may accrue upon the same." (Our emphasis.)

The daughter after the death of her mother married and had a child, who is the appellant, Jane Guthrie Beckley, who later became and is now the wife of Pendleton Beckley, once a practicing attorney in Louisville, Kentucky, but for many years located in Paris, France, where he is engaged in the practice of the same profession.

The trustee following the deaths of Mr. and Mrs. Guthrie filed an action in the Jefferson Circuit Court to obtain interpretations of certain portions of the will and defining the duties of the trustee thereunder, the style of which was "John Marshall, etc., v. Frank Guthrie Akers, etc." the daughter in the meantime having entered into a second marriage with a man by the name of Akers, and by whom she had one child, who is the father of the infant non-resident defendants and who resides, with his infant children, in the State of Connecticut. In the John Marshall case interpretations were made of the questions submitted to the court, and the case seems to have been kept on the docket. Later other applications were made for additional interpretations and directions to the trustee as it would apply for same in that case by the filing of an additional pleading or amended pleading and bringing all interested parties before the court on each renewed application.

In one of them it was adjudged—pursuant to the submission of the question to the court—that the trustee had the right to pay to the daughter (now Mrs. Akers) the entire income of the property, and, correspondingly, that she had the right to expend it if she and the trustee deemed it necessary and consented thereto. Pursuant thereto she did expend the larger portion of, if not the entire income, which some years amounted to, possibly, as much as $70,000, and which displayed a somewhat extravagant disposition on her part.

In the meantime the trustee had procured for the daughter an expensive residence in Virginia, near Hot Springs in that state, and in which she resided for some years; but she became afflicted with some heart ailment and was advised by her physicians that the altitude of her residence was not conducive to the cure or alleviation of her affliction, and she conceived the idea of disposing of it, which the trustee did at considerable loss below the price it cost. The daughter then returned to Louisville and in the course of time, after first applying to the trustee to provide her a home, she contracted to rent an apartment in the city at a monthly rental of $200 per month. In the meantime the afflictions of the daughter both increased and multiplied until she became practically a helpless invalid, calling for the aid of constant medical treatment, sometimes hospitalization, and the constant attendance of nurses. By that time the income from the estate had become—because of economic conditions—greatly reduced until it amounted to, perhaps, not exceeding $8,000 per year, and possibly lower.

Because of the situation so described the daughter for the first ten months of her occupancy of the selected apartment for her home failed to pay the rental, and it thereby became $2,000 in arrear. In the meantime, as stated, she had applied to the trustee to pay the rent, but it deferred its determination and later filed another petition or amended petition in the original John Marshall case—which was still kept on the docket—to obtain the advice of the court as to whether it should pay out of the corpus of the trust that rental by way of providing the daughter a home, either the accumulated amount, or that to accumulate in the future as long as the premises were occupied by the daughter.

All parties interested (except Mrs. Beckley, the grand daughter of testator) consented for the trustee to assume the rental obligation out of the corpus of the estate, but she appeared and in her answer vigorously objected to the trustee paying the rent out of the corpus of the estate, which latter at the time amounted to at least $420,000. The personnel of the trustees changed in the meantime, as one would resign and otherwise cease to act—the present one, and the one which filed the intervening pleading here involved, was and is the Kentucky Title Trust Company, a corporation doing business in Louisville, Kentucky, and who of course was and is bound by any directing or interpreting judgment

heretofore obtained by any of its predecessors. The infant non-resident defendants were represented by a warning order attorney, who made his report and by which he submitted the questions to the court without taking a position either way.

After considerable preparation, including the taking of testimony, the question was submitted to the court and it interpreted the will as giving to the trustee authority, as well as positive directions, to provide for the daughter, Mrs. Akers, who as said is now approaching seventy years of age, a home in which to live, either by purchase or by lease; but the court adjudged that the rental to be paid out of the corpus of the trust for such purpose should include *only* that which accrued from and after the filing of the pleading of the trustee in the original John Marshall case to obtain directions, and that no rent accumulated up to that date should be so paid. From that judgment the daughter prosecutes the original appeal to this court, wherein she filed the entire record made on the hearing of the last application by the trustee; and the trustee and Mrs. Beckley prosecute appeals on the same record, after having obtained leave to do so by this court. So that we have in the record before us practically three appeals: One prosecuted by Mrs. Akers, one by Mrs. Beckley, and a third by the trustee.

Mrs. Akers complains of the judgment because it did not direct the trustee to pay the past due rental on the apartment, amounting, as we have said, to about $2,000; Mrs. Beckley complains because the court directed the trustee to pay any part of the rent out of the corpus of the trust property, and the trustee questions the accuracy of the judgment because the court did not require a bond to be executed for the benefit of the non-resident infants as is prescribed in Section 410 of our Civil Code of Practice; and it is only those three questions that are involved on this appeal. In disposing of them we will first consider the appeal by Mrs. Beckley, then that prosecuted by Mrs. Akers, and lastly, the one prosecuted by the trustee.

1. It is vigorously argued by learned counsel for Mrs. Beckley, that the will properly interpreted does not authorize the involved expenditure out of the corpus of the property for the purpose indicated, since, as her counsel urges, it was contemplated that in the conditions

outlined, it was the duty of her mother, the testator's daughter, to make such provision for her habitation out of the income of the trust estate and to not encroach upon its corpus for that purpose. Besides seeking to sustain that contention from the terms of the will, considerable portions of the brief are taken up with references to extravagances of the daughter following the death of her mother and which is severely criticized, and for which, we must admit, there is some foundation. But after all the question submitted is quite apart from those considerations. It is essentially one of authority conferred upon the trustee by the testator's will, and not one relating in the remotest degree to frugality and economy on the part of the cestui que trust. Therefore, if the will of Mr. Guthrie authorizes the trustee to defray the involved expense out of the corpus of his estate, the prior extravagance of his daughter in dissipating its income, the right to which had previously been adjudged by the court, becomes immaterial.

It will be perceived from the excerpts taken from the will supra that the trust created by the testator was to endure throughout the life of testator's wife and that of his daughter and twenty-one years after the death of the latter, and that the income should be paid to them during their lives with the express statement that "I do not desire to limit, or name the amount (of income) which my trustee shall pay my wife and daughter but it is my wish that it shall be more than amply sufficient to maintain them in a manner suitable to their condition and estate, absorbing the whole of said net income if my trustee thinks best." The court in one of its former judgments so determined, and if we should now conclude that the will did not sustain that determination, it is yet binding upon the parties. That provision related exclusively to the authority of the trustee to appropriate net income for the support and maintenance of the cestui que trust in the manner outlined by the testator.

Later on he said: "And if at any time it is deemed best by my trustee, or becomes necessary, I direct my trustee to purchase or provide a suitable residence for my daughter * * *." That language expressly directs the trustee in the contingency provided for to purchase or otherwise provide a suitable residence for his daughter if the condition should arise calling for it, and does not prescribe that the fund for that purpose shall

734

be derived from income only—the language being broad enough to authorize the trustee to provide it from the corpus of the trust property. There is no way by which a residence may be provided for one except by purchasing it, or leasing it. It is, therefore, manifestly clear that the testator imperatively required the trustee to make provisions for a residence for his daughter, if conditions arose requiring it, by the one method or the other, and we have no hesitancy in concluding that the court correctly determined that the trustee might provide the necessary residence for the daughter by assuming and paying the rent therefor out of the corpus of the estate, it being clearly shown that the amount thereof was reasonable and that the selected residence was eminently suitable. To our minds there is no escape from that conclusion, since it is in strict conformity with the plain and unambiguous language of the testator's will. He did not circumscribe that right and authority on the part of the trustee by any language whatever, not remotely intimating that if the conditions should be produced by extravagance on the part of his daughter, then no such authority should be exercised. No such inhibition appears anywhere in his will.

Learned counsel for Mrs. Beckley cite us to a number of opinions including some rendered by other courts, as well as text writers, wherein the principle is approved requiring trustees to adhere strictly to the terms of the trust under which they are acting and to not devote any of the funds for any purpose, unless clearly authorized by the trust instrument. The principles so put forward are fundamentally sound, but they are totally inapplicable where the language creating the trust plainly and undisputably marks out the course to be pursued by the trustee, and which is undoubtedly indicated to be in the manner above pointed out in the will of Mr. Guthrie wherein he created the instant trust. We therefore conclude that the court properly interpreted the will of Mr. Guthrie as authorizing the involved expenditure by the trustee out of the corpus of the trust estate, and which brings us to a consideration of the second appeal supra—that of Mrs. Akers, testator's daughter.

2. As we have said, the only question presented by her appeal is the court's refusal to authorize the trustee to pay past accumulated rent for her apartment home, but limited such direction only to future rents accumu-

lating after the trustee filed its last pleading seeking the advice of the court. No reason is given in the opinion of the court why its interpretation was so confined, and we have searched the will in vain to find any language remotely sustaining the court's ruling in so limiting its judgment.

In the first place, there is nothing in the will conditioning such requirement upon a request made of the trustee by testator's daughter. On the contrary, the trustee is expressly directed to make such provision out of the testator's estate whensoever it "becomes necessary" or whensoever "it is deemed best" by the trustee. The testimony taken in the case proves without contradiction that the trustee deemed it best for the contested payments to be made by it out of the corpus of the estate, and, furthermore, the same character of uncontradicted proof shows that it has "become necessary" for it to be done. To require the daughter in her invalid condition—burdened with its necessary expenses—to pay the past due rental out of the reduced income from the estate would not only cripple her opportunities for maintaining herself in the station that her father desired—as manifested by the language of his will—but it would also deprive her of the absolute necessities incident to her afflicted condition. According to the undisputed professional testimony in the case, Mrs. Akers (the daughter of testator) cannot possibly survive more than five years at the outside limit, which if done, and the rental should be paid until her death, the total amount would be only $12,200, thereby reducing the corpus of the estate to something like $407,800 instead of $420,000. It is therefore clear to us that the court erred in not directing the trustee to pay the past accumulated rent of the apartment home of Mrs. Akers, and which brings us to the third and last appeal supra—that of the trustee.

3. As hereinbefore stated, the only question involved in the appeal by the trustee is, whether or not the court should have required the execution of a bond by Mrs. Akers, as is provided by Section 410 of our Civil Code of Practice, in favor of the constructively served non-resident infants? They are the infant children of the daughter's son by her second marriage with Mr. Akers who died in 1926. That son sustains the same relationship to the trust estate as does Mrs. Beckley. They are each grandchildren of the testator, and neither

of them is mentioned personally nor are they referred to indirectly in testator's will as being participants in the benefits of the trust, except upon very remote contingencies. The interest of testator's grandchildren (one of whom is the father of the infant non-resident defendant, and the other Mrs. Beckley) in preserving the corpus of the estate is identical with the same contingent interest of their children. In other words, there is no conflict between the future interest of the grandchildren and that of their children. So that, the defenses made by testator's grandchildren inure to the benefit of his great-grandchildren as well.

It is, to say the least of it, doubtful if this is the character of case in which the bond provided for by the section of the Code supra (410) is required; but, waiving that question, and treating it arguendo as a case in which the bond is required, then it is clear to our minds that the infants and constructively served defendants—were unnecessary parties to this litigation, since their interest as we have seen, is identical with their parent's. They are therefore representatively parties to the litigation, although not be made such eo nomine.

That principle of practice, by means of which future interest holders may be represented in a cause, is thoroughly established in the law and frequently applied by this court, as will be seen from these domestic opinions; Sherley v. Sherley, 192 Ky. 122, 232 S. W. 53; Danforth v. Talbot's Adm'r, 46 Ky. 623, 7 B. Mon. 623; Allan et al. v. Vanmeter's Devisees, 59 Ky. 264, 1 Metc. 264; Grubbs, Ex'r v. Grubbs, Ex'r, 190 Ky. 258, 227 S. W. 272; Russell v. Meyers, Trustee, 202 Ky. 593, 260 S. W. 377; Howard v. Howard, Trustee, 212 Ky. 847, 280 S. W. 156; Park v. McCombs, 146 Ky. 327, 142 S. W. 401; Hermann v. Parsons et al., 117 Ky. 239, 78 S. W. 125, 25 Ky. Law Rep. 1344; Pineville Steam Laundry v. Phillips, 254 Ky. 391, 71 S. W. (2d) 980; Longworth et al. v. Duff, 297 Ill. 479, 130 N. E. 690; Masonic Widows' & Orphans' Home & Infirmary v. Hieatt Brothers, 197 Ky. 301, 247 S. W. 34; Newkirk et al. v. Ingels, 197 Ky. 473, 248 S. W. 488; Weberpals v. Jenny, 300 Ill. 145, 133 N. E. 62; Lowe v. Taylor et al., 222 Ky. 846, 2 S. W. (2d) 1042; Jarman on Wills, Vol. 2, pp. 416 et seq.; Johnson v. Jacob, 11 Bush, 646. The case of Johnson v. Jacob, supra, so confidently relied on by counsel for the trustee, was one wherein the interest of the preceding taker was antagonistic to that of future ones whose

interest was either vested or contingent, and in which condition the doctrine of virtual representation does not apply, as we have hereinbefore pointed out. We therefore conclude that the court did not err in not requiring the bond to be executed.

Wherefore, the judgment is reversed on the appeal of Mrs. Akers, but it is affirmed on the appeal by Mrs. Beckley and that of the trustee. Since this litigation sought advice of the chancellor as to the duty of the trustee under the terms of the trust, we conclude that the cost of the litigation should be paid out of the trust estate, all of which is so ordered, with directions that judgment be corrected so as to conform to the principles of this opinion.

The whole Court sitting.