Judge Ewing
delivered the Opinion of the Court.
On the 22nd of September, 1831, Maria P. Pope leased to Peter Ferguson and James Hendricks, a lot of ground in Louisville, at the yearly rent of two hundred and ten dollars. Ferguson and Hendricks improved the lot, by erecting a steam mill on the same, and they and one McDougald, on the 15th of August, 1832, by deed duly recorded, conveyed the leasehold lot, with the mill, fixtures and improvements, to Matthew Ferguson, to secure him, in the sum of six hundred and sixty four dollars and seventy five cents, due by note, bearing date the 14th of August, 1832, and payable four months after date.
On the 18 th of October, 1832, Peter Ferguson, Hendricks and McDougald conveyed the same lot, mill &c. to L. L. and T. T. Shreve, by deed duly recorded, to secure them in the payment of sixteen hundred and twenty four dollars fifty four cents, due by three *65 notes, all bearing date the 18th day of October, 1832— the first at four months, for five hundred and thirty one dollars and ten cents, the second for five hundred and forty one dollars and fifty cents, at two hundred and forty days, and the third at twelve months for five hundred and fifty one dollars and ninety one cents.
Matthew Ferguson instituted suit at law, on his note for $664 75 cents, and recovered judgment, and sued out execution thereon, and caused it to be levied on the equity of redemption of Peter Ferguson &c. in the leasehold premises, mill &c. and the same was sold, on the 3rd of June, 1833, on a credit of three months, and Goring became the purchaser, for the sum of $705 36 cents, it being the full amount of Matthew Ferguson’s debt and costs at law. And, on the 2nd of October, 1833, the sheriff conveyed the same to Goring. On the 19th of June, 1834, Matthew Ferguson, reciting his mortgage, and that Goring had paid his debt, by the purchase of the equity of redemption, assigned his mortgage on the leasehold lot, mill &c. to Goring.
Goring, in some short time after his purchase of the equity of redemption, entered into and enjoyed the possession, and whilst in, paid the rent to Mrs. Pope, the lessor, and paid the Shreves $189 44 cents on their demand.
On the 1st of May, 1835, the Shreves filed their bill to foreclose their mortgage. Goring answered — setting out his condition and relation to the property, and the payment made to the Shreves, on their mortgage debt, and the payment of rent, and prayed that he might be first satisfied.
On the 31st of May, 1836, the Chancellor decreed, that Goring was the purchaser of the equity of redemption, under the execution of Matthew Ferguson, and that that purchase paid off and extinguished M. Ferguson’s prior mortgage, and that he was only entitled to the residue of the property, after the payment of the mortgage debts to the Shreves, and that the payment of the $189 44 cents was made by him, to discharge that debt, and he was not entitled to a return of the samé, and that the payment of the rent by him, was *66 proper as occupying tenant: or, in other words, the Court, in the distribution of the proceeds of the sale of the mortgage premises, postponed his claim to the claim of the Shreves.
An execution on a judg’t at law, for a mortgage debt, cannot be levied on the equity of redemption of the mortgaged property ; and a sale of the equity under such an ex’on, passes nothing to the purchaser. The 36th sec. of the execution law of 1828, which sub jects equities ofre demption to sale under ex’on, applies only to executions of general creditors ; not to an ex’on of the mortgagee upon his mortgage debt.
But if the purcha •ser has paid the mortgagee his -debt, and obtained an assignment of his mortgage, he will be substituted in his place, and havethesame priority oflien over a junior mort ■gage.
Goring’s rights will depend on the validity of his purchase under execution. If that sale was proper and •authorized by law — as by it, the debt of M. Ferguson was extinguished — he could hold the equity of redemp-, tion only subject to the lien of the Shreves. If it was unauthorized by law, then he acquired nothing by his purchase, and advanced his money for nothing; and in that event, would, no doubt, have been authorized to quash the sale, or to have obtained redress in chancery, by a restitution of his money from M. Ferguson, especially if he was privy to the sale. But in that event, M. Ferguson would have been left in stain quo as to his prior lien. And as Goring has made an arrangement with him, paid him his money, and received ah assignment of his mortgage, he should, in the event of his purchase under execution being void, be substituted in 'his place, and remitted to all his rights under his mortgage. So that to arrive at a true conclusion as to his condition, it will be necessary to determine, whether his purchase under execution was valid: the validity of which will depend upon the single proposition, whether a mortgagee, by an execution at law, upon a judgment for his mortgage debt, can sell the equity of redemption of his mortgagor, in property mortgaged to him to secure the same debt.
It has been determined by the Supreme Court of New York, upon common law principles, that the equity of redemption of -a mortgagor in possession may be sold under execution, in satisfaction of the claims of general creditors; that tbie mortgage is a mere security, and the mortgagor has the legal estate, and legal seizin, as to all the world, except the mortgagee; Jackson vs. Willard, 4 John. Rep. 41; Hitchcock vs. Harrington, 6 John. Rep. 290; Collins vs. Torry, 7 John. R. 278; Runyan vs. Merserean, 11 John. R. 534.
The tendency of the decisions in this State, have been against the validity of such sales, even in the case *67 of a general creditor; and the enactment of our statute;, subjecting such interest to sale under execution, must have been predicated upon the idea, that the sale was unauthorized before. But without determining whether such sales were authorized, at common law, under- the execution of a general creditor, we can say, that we know, of no adjudged case of respectable authority in the English courts, in which it has been definitively settled, that the sale might be made inv satisfaction of the-mortgagee’s debt secured by the; mortgage.
Chancellor Kent, in the case of Tice vs. Annin, 2 John. Chy. Rep. 130, in. commenting upon the sacrifice, of property and mischiefs produced by such sales, uses the following strong language: — “The true and only remedy “for all this mischief, is to prevent such sales; and I “ think I shall be inclined, if the case should arise here-44 after, to prohibit the mortgagee from .proceeding to sell 44 the equity of redemption.. He ■ ought, in every case, to , “ be put to his election, to proceed directly on his mort- “ gage, or else to seek other property, to obtain satisfac-44 tion of his debt. I see no other way to prevent a sac-44 rifice of the interest of the mortgagor, and it is mani-44 fest’ly equitable,, that the mortgagee be compelled to 44 deal with his security so as not to work injustice.”
The sacrifices, mischiefs and embarrassments produced by such sales, bring us to the conclusion that they were unauthorized by the wisdom of the common, law.
The question therefore occurs, whether the statute of 1821, re-enacted and adopted into the act of 1828, 1 Statute Laws of Kentucky, 653, by any fair interpretation of its terms,- or the objects intended to be attained, authorized the sale of an equity of redemption, in satisfaction of the mortgagee’s debt secured by the mortgage.
It provides, in section 36, that, 44 When estate real, 44 personal, or mixed,- is held or covered by mortgage, 44 deed of trust, or other incumbrance, all the right, title 44 and interest, legal or equitable, which the mortgagor, 44 or grantor, has in said estate, shall be subject to be 44 levied upon and sold, by execution, in the same man- *68 “ ner, as such property might have been sold, if no such “incumbrance had existed; and the purchaser shall “ take it subject to such incumbrance, and may pay off, and “ discharge such incumbrance, and thereby perfect his “ title, in the same manner as the grantor, mortgagor, “ or other person having an equity of redemption there- “ in, might do. Provided, however, when such property “ shall be real estate, then the mortgagor or grantor “ shall have the right to redeem the same within the “ year, but if the purchaser shall have paid off or re- “ deemed the real estate, from such incumbrance, the gran- “ tor, or mortgagor, shall also repay and refund the “ amount properly paid, by such execution purcha- “ ser, in discharge of such incumbrance &c.: provid- “ ed further, that the purchaser of such mortgage pro- “ perty, shall give bond and security that he will not, “ in twelve months, sell or remove the property out of “ the State, but will, during that time, have the pro- “ perty, forthcoming at all times, to answer any order or “ decree,” &c.
There is nothing in the terms of the act, or in the remedy intended to be provided, that would bring the mind to the conclusion, that the mortgagee’s debt was within the contemplation of the Legislature, or was intended to be provided for by its enactment. His debt is secured by his mortgage, and he had, by the laws then existing, a full and perfect remedy to enforce its collection, by a foreclosure and sale of the property mortgaged. He had, by his own arrangement, provided himself with this remedy, which was full and complete without legislative interposition, besides having the common right of other creditors to obtain his judgment at law, and make his debt out of other property of the debtor. He needed no other aid to come at his debt, and in all reasonable propriety, should be left to the remedy provided by the terms of his own contract with his debtor.
Not so with other general creditors; the property of their debtor might be embarrassed with mortgages, deeds of trust and other incumbrances, to secure, perhaps, a very inconsiderable debt; and it was then certainly *69 very doubtful, (if at all allowable,) whether an equity of redemption could be levied upon and sold under execution. It was necessary to provide for them, a remedy to reach their debtor’s interest in property mortgaged, or otherwise embarrassed by incumbrances. And when that object was attained, all the evil that existed was fully provided for, and complete and speedy remedy afforded to that class of creditors, who alone needed assistance.
Besides: the terms of the act very clearly indicate, that this class of creditors were alone in the contemplation of the Legislature. It provides that, the purchaser shall take the property purchased subject to the incumbrance, and may pay off and discharge the same; which certainly implies that the incumbrance is not extinguished by the purchase, but remains in full force, and must be paid off by the purchaser, to entitle him to the estate. But if he purchase in satisfaction of the mortgage debt, each bid he makes will reduce the . amount of the mortgage debt, and if he bid the whole debt, the whole amount of the incumbrance will be extinguished, and his responsibility not increased, or his purchase rendered more valuable, than if he had bid only a single dollar or cent, unless he be made subject to pay the amount of the incumbrance, notwithstanding its extinguishment by the purchase. And if he be still liable to pay it, to whom shall he pay it? Not to the mortgagee, for his debt is paid, and not to the mortgagor, for his equity of redemption is purchased. So that he is permitted to buy the estate, subject to the incum-brance, when by the operation of the sale, the incum-brance is extinguished, and he has nothing to pay for it, and consequently gets the whole estate, for the amount bid for the equity of redemption alone. Such a trap for the sacrifice of estate, under execution, never, in our judgment, entered into the mind of the Legislature; nor will we give to their enactment such a mischievous construction.
By limiting the statute to the general creditors, or to all those judgments and executions, other than for the debt secured by the mortgage or other incumbrance, *70 consistency and harmony pervades its provisions, the remedy necessary to be provided secured, and those ruinous consequences avoided.
The assignee of the first mortgage, having been let into the possession, shall,upon the bill of the juniormortgagee, account for the profits, after deducting rents — the property being leasehold — and, subject to this account, will have his mortgage debt first paid out of the proceeds of the property.
This view is sustained by the subsequent clauses of the statute. They provide for the redemption of the property by the mortgagor, by requiring him to pay, not only the purchase money, but also the sum paid by the purchaser in extinguishing the incumbrance. They also provide that, bond and security shall be given, that the property purchased shall be forthcoming, to abide any order or decree of a court of equity,, and gives to that court the power to control the estate mortgaged, whether the mortgage be forfeited or not; all contemplating the existence of the mortgagee’s incumbrance, after the sale, and providing for its security, and all pointing to an exclusion of the idea of a sale under execution to pay his debt.
And it has been decided by the Supreme Court of Massachusetts, 1 Pick. Rep. 351, on a statute similar in its provisions to ours, that the equity of redemption of the mortgagor, could not be sold under execution at law, in satisfaction of the mortgage debt.
Upon the whole, therefore, we conclude that the sale in question was illegal and unauthorized by law, and passed nothing to the purchaser.
But as a mortgagee, if let into possession, should account for profits, and, as we have said, Goring, by taking an assignment of the mortgage of Matthew Ferguson, should be substituted in his place, he being let into possession, should also account for the issues and profits, after deducting rents paid, to be applied towards the payment of his mortgage. And the balance of his mortgage debt, as well as the sum paid to the Shreves, as paid in mistake of his rights, should be first paid out of the proceeds of the sale of the mortgaged premises.
It is, therefore, the opinion of the Court that the decree of the Chancellor be reversed, and the cause remanded, that the necssary facts may be ascertained, and a decree- rendered according to the principles settled in this opinion. And the áppellant is entitled to his costs in this Court.