MOTION.

*Case* 32.

October 6.

The case stated.

## Bronston *vs* Robinson.

APPEAL FROM THE MADISON CIRCUIT.

*Execution.    Sale of mortgaged property.    Parties.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS was a motion to quash a sale under execution, on the ground, among others, that the slave which was sold, was not legally vendible under the execution; and the Court having quashed the sale, the only question which need be considered in revising that decision is, whether the slave, or any interest in him, was legally vendible under the execution.   It appears that on the 30th of October, 1841, William Robinson, the plaintiff in the motion, mortgaged to Turner a tract of land and all his slaves, among which was Dave, the one now in question, and also all his personal estate, to secure the payment of a debt to him, and also to indemnify the mortgagee for becoming his surety, as he was about to do, in replevying an execution in favor of Smith against Robinson, and also in another case.   On the 7th day of December, 1841, William Robinson martgaged to E. G. Robinson, the same slaves and several tracts of land and other interests, to indemnify him in assuming a large debt due from the mortgagor to Busk; and on the same day, E. G. Robinson mortgaged the same property to Busk to secure the said debt.   On the 3d day of May, 1842, an execution issued on the replevy bond of Robinson and Turner to Smith, referred to in the first mortgage, and was levied on the negro, Dave, who was sold, subject to the mortgages, and Bronston became the purchaser at $76 25.

There is no doubt that under the 36th section of the execution law of 1828, a general creditor who is wholly

unconnected with these mortgages, and whose debt is in no manner secured by them, might levy his execution on the equity of William Robinson, the original mortgagor; and great as might be the confusion arising from selling under different executions, or to different purchasers, the mortgagor's equity in different articles of property, and difficult as it might be to adjust, in a proper manner, the conflicting equities of the various parties, this difficulty cannot be regarded as a ground for quashing a sale, because the case, notwithstanding this ulterior difficulty, comes directly within the terms of the statute.   But it was decided in the case of *Goring's executor* vs *Shreve,* (7 *Dana,* 64,) and reiterated in the case of *Swigert* vs *Thomas,* (*Ibid,* 220,) that the mortgagor's equity of redemption is not subject to the mortgagee's execution on a judgment for the mortgege debt secured by the mortgage; and although in each of these cases, the mortgagee was the plaintiff in the execution, and in the first case in which alone the question is discussed, that circumstance is particularly adverted to and made the foundation of part of the reasoning of the Court, yet we are of opinion, that the principle of that case applies equally to this, in which although the creditor is not the actual mortgagee, his debt is, nevertheless, secured by the mortgage.   Though not nominal mortgagee, he is entitled to the benefit of the mortgage, and may enforce it in equity; and cannot, while he retains this right, be regarded as a general creditor or a stranger to the mortgage; for he has a lien in equity for his security.   The mortgage secures the execution debt, although the execution creditor is not the mortgagee; and the execution debt is in truth the mortgage debt.   The reasoning in the case of *Goring's executor* vs *Shreve,* which goes to show from the provisions of the act itself, that the Legislature did not intend to provide for the mortgagee's debt, applies with equal force to the case of a debt secured by the mortgage though the creditor be not the mortgagee; and although it is true, that in the present case it cannot be said that the creditor has, by voluntary arrangement, provided for himself a remedy on the mortgage: yet as he has in fact such remedy, until in some manner it be removed, there was no

BRONSTON
*vs*
ROBINSON.

Property mortgaged to secure a particular debt cannot be sold under execution to satisfy that debt, though the mortgage be not made to the creditor, but to the surety who is bound.

greater necessity for giving him the remedy by execution against the equity of the mortgagor, than there was to give it to the voluntary mortgagee; and as precisely the same uncertainty, confusion and liability to sacrifice even in the one case as in the other, there is no reason for giving a more favorable construction to the statute in the one case than in the other.

If in the case of a direct mortgage to the creditor, the statute is construed not to authorize a levy of his execution on the equity, because the purchase under such levy would necessarily diminish and might extinguish the incumbrance, when the statute looks only to a purchase of a right subject to the incumbrance, and declares that the purchaser shall hold subject to the incumbrance—then as the effect of the purchase of the equity in this case, is precisely the same, it should follow that this case should be equally excluded from the operation of the statute. And although it be true that this construction may throw the creditor into a Court of Chancery, because his debtor, without consulting him, has made a mortgage which secures his debt, this is no more than the debtor could have done before the enactment of the statute. And he is left in that condition, not as a consequence of any thing he has done, but because the statute, upon fair construction, does not apply to his case; and because if the statute could be construed otherwise, and if it should be supposed that not having voluntarily taken a mortgage, he is entitled to a favorable construction of it, we say that the evils which must follow from an extension of it to his case, greatly outweigh the partial inconvenience which he may sustain from not being embraced in the statute. Besides, the mortgage was made in this case, for the purpose of furnishing a surety in the replevy bond for the debt, presumed to be sufficient, and directly accessible by execution; and there is, therefore, no real hardship upon the creditor, who has voluntarily sought the equity of redemption of the principal debtor, when the property of the indemnified surety was before him. If the mortgage was fraudulent, the creditor might, of course, disregard it, and put his execution on the property as if that mortgage did not exist. But there is no imputation of

fraud, and the property was, in fact, sold subject to all the mortgages.

We are of opinion, therefore, that the Court did not err in quashing the sale; and as the proper consequence of the quashal was, that Robinson was entitled to restitution, the order to that effect was also proper. Nor, as we suppose, is there any substantial ground of objection to the accompanying direction or intimation, that this order should supersede an order made in the chancery suit of Bush against these and other parties, for the restoration of the same slave by Robinson to Bronston, from whose possession the slave, held under this execution sale, had been taken under the original attachment order on Bush's bill, and hired by the Sheriff to Robinson. The effect of the whole is, that if Robinson had not restored the possession to Bronston, under the Chancery order, he was not to do it, and if he had done it, Bronston was to make re-delivery. It was all substantially right, because the sale being quashed, the foundation of Bronston's claim to the possession wholly failed. And even if the reference to the Chancery order and the apparent interference with it were technically wrong, and if both orders should have been left to be executed, each without reference to the other, the effect would have been, that Robinson would have delivered the slave to Bronston, under the Chancery order, and Bronston must have re-delivered him under the subsequent common law order in this case. And whatever may be said of Robinson's being thus authorized to disobey the Chancery order, there can be no substantial prejudice to Bronston in authorizing a dispensation with the formal act of delivery and re-delivery, which would leave the possession just where it is, if the Chancery order has not been obeyed ; and if it has been obeyed, the reference to it in this case is wholly inoperative.

We suppose Turner was not an indispensable party to the motion; and even if the costs should have been adjudged against Bronston and Smith jointly, the latter having been a necessary party to the motion, because he was plaintiff in the execution, that is a question between Bronston and Smith, and is not an available error against

Vol. IV.                19

---

BRONSTON
*vs*
ROBINSON.

Where a sale of property under execution has been quashed, an order for the restoration of the property is proper.

Surety in replevy bond, on which execution issues and a sale is made, is not a necessary party to motion by principal to set aside the sale for irregularity.

Robinson. We would remark, however, that it does not appear that Smith resisted the motion; and perhaps the fact that a judgment for costs was rendered against Bronston alone, might authorize an inference to the contrary, in which case Smith ought not, as between Smith and Bronston, to be liable for costs occasioned solely by Bronston.

Wherefore, the judgment is affirmed.

*Caperton* for appellant: *Turner* for appellee.