33 481
22a 278
26a 204
33 481
130 201
33 481
67a 184

## JESSE FUNK

### *v.*

## JAMES McREYNOLD's Adm'rs.

1. SALE OF MORTGAGOR'S EQUITY OF REDEMPTION UNDER EXECUTION — *of the effect thereof.* The sale of an equity of redemption upon execution, other than for the debt secured by mortgage upon the premises, vests the estate sold in the purchaser subject to the payment of the mortgage debt.

2. The purchaser, in such case, is not allowed to take and hold the entire interest in the land, since he purchased, and paid only the value of the equity of redemption. If payment of the mortgage debt is enforced, under such circumstances, from other property of the mortgagor, he will be subrogated to all the rights of the mortgagee, so as to enable him to indemnify himself out of the mortgaged premises.

3. The interest of a mortgagor subject to sale upon execution, is ascertained by deducting the amount of the mortgage debt from the value of his property.

4. A part of several notes secured by a mortgage upon real estate, were assigned. The assignee recovered a judgment at law, and sold a portion of the mortgaged premises under execution, and became the purchaser himself, and finally obtained a sheriff's deed. On the day he received the deed he became the assignee of several others of the same series of notes maturing subsequently to those first assigned. One of the notes was held by a third party, as assignee. *Held,* that the purchaser under execution acquired the property subject to the payment of a *pro rata* share of so much of the mortgage debt as the sale left unsatisfied.

5. SAME — *of the extinguishment of the residue of the debt held by the purchaser.* Equity will consider the notes subsequently acquired by such purchaser, as subsisting, or as extinguished, as may be most conducive to his interest. And as the whole of the property mortgaged was not sold under the execution, it was for his interest to keep the notes in force to preserve his lien upon the residue of the property mortgaged. And there being no intention manifested by him to cancel

31 — 33D ILL.

those notes, or to discharge his lien upon the residue of the property, they were held not to be extinguished.

6. PRIORITY OF LIEN *as between different holders of notes secured by mortgage.* The several holders of the notes are entitled to a priority in their payment according to the order of their maturity, and where one of the notes was reduced to a judgment the judgment takes the place of the note on which it was rendered.

7. APPORTIONMENT OF INCUMBRANCE *among several owners of mortgaged premises.* In the case given, should the property be more than sufficient to satisfy the liens, the incumbrance will be apportioned between the parties, the purchaser of the equity of redemption, and the mortgagor or his grantee, ratably, according to the value of the parcels they hold, respectively.

WRIT OF ERROR to the Circuit Court of Piatt county; the Hon. C. EMERSON, Judge, presiding.

Jesse Funk exhibited his bill in chancery in the court below to foreclose a mortgage executed by Asher W. Tinder to John A. Brittenham, to secure his ten promissory notes, payable to Brittenham on the first days of April, in the years from 1857 to 1866, inclusive. The complainant was the assignee of a portion of the indebtedness secured by the mortgage, being a judgment recovered by Brittenham for a balance due on the note maturing on 1st of April, 1859, and the note falling due 1st April, 1863. Previously, on the 14th of April, 1856, Brittenham transferred to James McReynolds the notes falling due on the 1st days of April, in the years 1857 and 1858. McReynolds recovered a judgment against Tinder at the April Term, 1857, of the court below, on the note maturing 1st of April, 1857, sued out an execution thereon, which was levied upon the mortgaged premises, except eleven acres thereof. The premises levied upon were sold on the 13th day of October, 1857, by the sheriff, and McReynolds became the purchaser for the amount of his execution and costs. The lands sold not being redeemed, the sheriff conveyed the same to McReynolds, on the 29th of August, 1859. On the same day Brittenham transferred to McReynolds the notes falling due on the first days of April, in the years 1860, 1861, 1862, 1864, 1865 and 1866.

On the 21st of September, 1860, Tinder, the mortgagor, still being in possession of the mortgaged premises, conveyed the same to Daniel Kelly.

This was the relative position of the parties in interest when the bill to foreclose was filed by Funk. Tinder, the mortgagor, Kelly, his grantee, and the administrators and unknown heirs of James McReynolds, who had in the meantime died, were made defendants.

The administrators of McReynolds answered the bill, setting up the assignment of the notes to their intestate, and admitting the sale to him under execution. They also filed their cross-bill, setting up the same matters, and that they held all the unpaid notes secured by the mortgage, except those held by the complainant; and prayed an account to be taken, and the payment of all the notes assigned to McReynolds, and upon default in such payment, they prayed a foreclosure and sale to satisfy the notes then due, in the order of their maturity. The complainant, Funk, answered the cross-bill, denying the rights of the administrators of McReynolds to have a foreclosure, or to have payment of any of the notes held by them prior to the payment of his own. Allen McReynolds answered the original bill, showing his interest as heir of James McReynolds. The answers were all without oath, and replications were filed. The evidence taken on the hearing, and the decision of the Circuit Court, appear from the following decree, rendered in the cause.

And now, on this 10th day of October, A. D. 1863, being the 6th day of the said term, this cause came on to be heard upon complainant's amended bill, the answer of Jacob Piatt and McReynolds, and replication of complainant, and the cross-bill of said Jacob Piatt and Allen McReynolds, as administrators of James McReynolds, deceased, and the answer of Jesse Funk, complainant, thereto, and replication.

And it appearing to the court that the said Asher W. Tinder, Daniel Kelley, Jesse Bush and John S. Madden have been duly served with process in this cause, and that publication of notice of the pendency of this cause has been made as required by the statute to all of the non-resident defendants to this cause, and the said Asher W. Tinder, Daniel Kelley, Jesse Bush, John S. Madden, and the unknown heirs and devisees of James McReynolds, having been three times solemnly called and came not, the

said amended bill of the said complainant, and the said cross-bill, are taken for confessed against them.

And it further appearing to the court that the said Asher W. Tinder did on the first day of November, 1855, execute and deliver to John A. Brittenham ten several promissory notes for land purchased of him, and to secure the payment of said notes made and delivered to said Brittenham a mortgage on the said lands, to wit: Part of the W. ½ of the S. E. ¼ and E. ½ of the S. W. ¼ of section No. 31, township 19 north, range six E., third P. M., commencing at the S. E. corner of said section 31; thence north 82 degrees 50 minutes E. 83 poles; thence N. 13 degrees E. 46 poles; thence S. 82 degrees 50 minutes W 57⅔ poles; thence S. 13 degrees W. 36 poles; thence N. 82 degrees 50 minutes 57⅔ poles; thence S. 13 degrees W. 46 poles; thence N. 82 degrees 50 minutes E. 19⅛ poles to the beginning, containing eight acres. Also commencing at the southeast corner of the above described tract, thence N. 82 degrees 50 minutes E. 12½ poles; thence N. 13 E. 46 poles; thence S. 80 degrees 50 minutes W. 12½ poles; thence S. 13 E. 46 poles; thence S. 13 W. 46 poles to the place of beginning, containing three acres. Also the W. ½ of the S. W. ¼ of section 16, 80 acres; the S. ½ of section 17, 320 acres; the N. E. ¼ of section 20, 160 acres, and the W. ½ of the N. W. ¼ of section 21, 80 acres, all in township 18 N., R. 6 E., third P. M., containing in all 651 acres. That said notes respectively, by their respective tenor and effects, became due and payable on the first day of April, in the years 1857, 1858, 1859, 1860, 1861, 1862, 1863, 1864, 1865 and 1866, bearing interest at six per cent., payable annually in advance; that one year's interest had been paid by the said Asher W. Tinder to the said John A. Brittenham in advance; that after the execution and delivery of said notes and mortgages by the said Asher W. Tinder to the said John A. Brittenham, he the said Brittenham, to wit: On the 14th day of April, 1856, for a valuable consideration, assigned the said first note falling due on the first day of April, 1857 and 1858, to the said James McReynolds, since deceased; that after said first note became due, the said James McReynolds sued the said Asher W. Tinder

on the same, and obtained a judgment at law in the Piatt county Circuit Court against said Tinder, at the April, 1857, Term thereof, for the sum of $1,087.33, being the amount of said note and the interest on the same, and costs of suit; that the said James McReynolds afterwards sued out of the clerk's office of said court an execution on said judgment, and caused the same to be levied on the W $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 16, 80 acres; the S. $\frac{1}{2}$ of section 17, 220 acres; the N. E. $\frac{1}{2}$ of section 20, 160, and the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 21, 80 acres, all in township No. 18 north, range 6 E., third P. M., containing 640 acres in all, and being all of the lands mentioned in said mortgage, except eight and three acre pieces above described, and caused the land so levied upon to be sold at sheriff's sale by the sheriff of Piatt county, Illinois, on the 13th day of October, 1857 ; that the said James McReynolds became the purchaser of all of said land so levied on at such sheriff's sale, for the amount of his judgment at law, and the interest and costs which had accrued on the same; that none of said land was ever redeemed from said sale, and that on the 29th day of August, 1859, the said James McReynolds took a sheriff's deed for all of the land so sold.

And it further appearing to the court, that on the 29th day of August, 1859, the said John A. Brittenham for a valuable consideration assigned the notes described in said mortgage, and due respectively on the first day of April, 1860, 1861, 1862, 1864, 1865 and 1866, to the said James McReynolds, and that the said James McReynolds died intestate on or about the 31st day of May, A. D., 1862, and that the said Allen McReynolds and Jacob Piatt, complainants in the cross-bill in this cause filed, are his legally appointed and acting administrators, and that they now hold, as a part of the personal assets of the estate of the said James McReynolds, in their characters as such administrators, the said notes falling due on the first day of April, 1858, 1860, 1861, 1862, 1864, 1865 and 1866, and that the same are unpaid.

And it further appearing to the court, that on the 24th day of January, A. D., 1861, the said John A. Brittenham assigned for a valuable consideration to Jesse Funk, the complainant in the

original bill filed in this cause, the judgment which the said John A. Brittenham had obtained against the said Asher W. Tinder on the note due April 1st, 1859, and also the note in mortgage mentioned, falling due April 1st, 1863.

And it further appearing to the court that the interest on all of said notes for one year had been paid by the said Asher W. Tinder, to the said John A. Brittenham; and that the sum of $689.50 had been paid by the said Asher W. Tinder, to the said John A. Brittenham, on the said note, falling due April 1st, 1859; and that the said John A. Brittenham obtained a judgment at law against the said Asher W. Tinder, in the September, 1859, Term of the Piatt Circuit Court for the balance due on said note, falling due April 1st, 1859, to wit: $504.23; that the said judgment still remains due, unpaid and unsatisfied, and the said John A. Brittenham had assigned his interest and title in and to said judgment at law to the said Jesse Funk, complainant in the original amended bill in this cause filed; and that the said Asher W. Tinder, on or about the 21st day of September, 1860, deeded all of the lands mortgaged to the said Daniel Kelly. It is ordered by the court that this cause be referred to the master in chancery, with instructions from the court to take an account of the amount due to the said Allen McReynolds and Jacob Piatt, as administrators of James McReynolds, upon all of the said notes which have been assigned to James McReynolds by the said John A. Brittenham, including the note upon which judgment at law was obtained, and land sold by the said James McReynolds during his lifetime, to wit: on the notes falling due respectively on the first day of April, 1857, 1858, 1860, 1861 and 1862, and also to find the amount due Jesse Funk, complainant in original bill, on the notes falling due respectively on the 1st day of April, 1859 and 1863, including the unpaid principal and interest on said notes, and excluding all costs made in suits at law on the same. And the said master in chancery having taken the accounts under the instructions of the court, and reported as follows, to wit:

"Monticello, Piatt county, Illinois, October 9th, 1863. To the Hon. C. EMMERSON, Judge of the Piatt county Circuit Court.

The undersigned master in chancery, of Piatt county Illinois, to whom was referred for calculation the notes in the case of *Jesse Funk* v. *A. W. Tinder et al.*, chancery case No. 59, on the docket at the September Term, 1863, would beg leave to report that he finds the following amount due and unpaid, viz.:

To Jesse Funk, on note due April 1st, 1859, ..... $526 58
   "    "    "    "    "    "    "    " 1863, ..... 1,416 60

                                           $1,943 13

To Estate of James McReynolds, deceased.

On note due 1st April, 1857,........... $1,416 60
   "    "    " 1858,........... 1,416 60
   "    "    " 1860,........... 1,416 60
   "    "    " 1861,........... 1,416 60
   "    "    " 1862,........... 1,416 60
                                        $7,083 00

Oct. 9th, 1863, total amount due on said notes, $9,026 13

There are three notes not yet due, of which I have not taken any account, and having fully reported, would ask to be discharged with my charges. Fees $5.

A. G. BOYER, *M. C. &c.*"

Which said report is approved by the court.

It is therefore ordered, adjudged and decreed by the court, that the said Asher W. Tinder, Daniel Kelly, Jesse Bush, John S. Madden, and the unknown heirs of James McReynolds, pay to Allen McReynolds and Jacob Piatt, administrators of James McReynolds, deceased, complainants in cross-bill, the sum of $7,083.00, with six per cent interest thereon from this date, together with their costs in this cause, within thirty days from this date, and to Jesse Funk, complainant in original amended bill, the sum of $1,943.13, with six per cent interest thereon from the date of this decree till paid, together with his costs in this cause within thirty days from this date.

It is further decreed by the court, that if default be made in the payment of the sums aforesaid, that the master in chancery

for Piatt county, Illinois, sell the lands mentioned in said mortgage, at the north door of the court house in Monticello in said county, at public sale for cash to the highest bidder, after having given at least thirty days' notice of the time, place and terms of said sale by posting notices thereof in four public places in said county; and out of the proceeds of said sale he pay first the costs of this case and of the sale; and second to Allen McReynolds and Jacob Piatt, administrators of James McReynolds, deceased, on the said note falling due April 1st, 1857, the sum of $1,416.60; on the note falling due April 1st, 1858, the sum of $1,416.60; and third to Jesse Funk, on the note falling due April 1st, 1859, the sum of $526.53; and fourth to said Allen McReynolds and Jacob Piatt, on the note falling due April 1st, 1860, the sum of $1,416.60; on the note falling due April 1st, 1862, the sum of $1,416.60; and fifth to Jesse Funk, on the note falling due April 1st, 1863, the sum of $1,416.60; holding the overplus, if any, subject to the further order of this court; and that he report his action to this court.

Funk now brings the case to this court on writ of error, and assigns:

1st. The court erred in granting the prayer of the cross-bill.

2d. The court erred in decreeing a foreclosure of the mortgage to pay the first note, due April 1st, 1857, which was paid by sale of land to James McReynolds in his lifetime.

3d. The court erred in decreeing the payment of any of the notes held by the defendants in error before the notes held by plaintiff in error were paid.

4th. The court erred in not granting the prayer of the original bill, and decreeing the payment of the notes held by plaintiff in error, and a foreclosure for this purpose.

Mr. W. E. LODGE, for the plaintiff in error.

When James McReynolds purchased the equity of redemption in the 640 acres of the mortgaged premises, under the judgment at law obtained on the first mortgage note, for about $1,100, and took a sheriff's deed, he satisfied his debt of record, merged the legal and equitable estate, vested both in himself,

and barred his right to foreclose as to the 640 acres thus purchased, and his administrators have no greater rights than he had. This is the general rule, that the purchase of the equity of redemption by the mortgagee, especially in consideration of the mortgage debt, merges the charge in the estate and extinguishes the mortgage lien, and it cannot afterwards be set up against subsequent mortgages. *Toulmin* v. *Steere*, 3 Meriv. 209 to 224; *Parry* v. *Write et al.*, 1 Sim. and Stu. 369; *Brown* v. *Stead*, 5 Sim. 535 (found in 7th Eng. Ch. 524); *Burnet* v. *Denison*, 5 Johns. 35 to 40 ; *James* v. *Johns*, 6 id. 422.

In the latter case Chancellor KENT lays it down as the rule, and the doctrine is affirmed by the higher court, though the decree is reversed on other grounds.

In 11 Sergt. and Rawl. 223, the court says a mortgage is but a security for the payment of a debt, and when that is paid, or extinguished, it can never be resuscitated.

In *Campbell* v. *Carter*, 14 Ill. 291, the court said: "A court of equity will not interfere to relieve a party from the effects of an injudicious 'bargain."

James McReynolds, deceased, stood in no better condition than did Farwell there; by his own voluntary act he extinguished his debt, entered satisfaction of record (by the sheriff's sale) of the amount due on the first note, and on the same day that he took his sheriff's deed he "got in " — by purchasing the notes, six of the outstanding incumbrances, and still held the seventh — the note due April 1st, 1858. He made no efforts to collect any of these notes during his lifetime; he never did, nor said anything to indicate any intention to rely on or keep up his mortgage. Funk seeing the debt satisfied of record, and that McReynolds had purchased near $10,000 worth of land for less than $1,100 (Tinder gave $10,000 for 651 acres, 640 of which are embraced in McReynolds' deed), supposes that he (McReynolds) has abandoned his mortgage, and therefore becomes the *bona fide* purchaser for the value of the two outstanding notes (in effect two junior mortgages), and must be in as good position as was the bank judgment in the case of *Campbell* v. *Carter*. McReynolds had the right to foreclose on

the first note, and thus save his mortgage lien; his election to sell and purchase the equity of redemption under a judgment at law, must be taken, in absence of any other proof, as evidence of his intention to abandon the mortgage.

In *Mocatta* v. *Murgatroyd*, 1 P. Wms. 395, and it is believed in every well considered case since, when a party, capable of making an election, who has acquired the equity of redemption, has been allowed to set up his mortgage against subsequent mortgages, it has been on condition that he waive his claim to the equity of redemption.

In this case McReynolds never offered to waive his right, and his administrators cannot do it.

At the death of James McReynolds the absolute title to 640 acres of the mortgaged premises vested in his heirs, subject to the payment of Funk's notes. This decree requires the heirs to pay to the administrators the amount due on the note due April 1, 1857, by the payment and satisfaction of which they obtained title through their ancestor, James McReynolds, and in default forecloses them. The administrators are not charged with anything on account of the note due April 1st, 1857, and have no right to demand payment of it. Tinder paid it to James McReynolds, and we insist, all other notes held by him, by allowing him to take a deed for $10,000 worth of land, for no other consideration than his (Tinder's) indebtedness on these notes. By the sheriff's deed McReynolds took all of Tinder's interest in the 640 acres, including dower, the debt being for purchase-money, and Tinder had a right to have the notes held by McReynolds satisfied. They have been treated as satisfied by McReynolds during his life, no payment having been demanded, though one of them had been due more than four years prior to his death.

This decree in effect subjects the lands belonging to the heirs of James McReynolds for sale on the petition of the administrators, without anything to show that such sale is necessary to pay the debts of the deceased. It subjects to a cash sale some $10,000 worth of the heirs' lands, without any reason, except it be to increase the commissions of the administrators. Such a

sale for cash, on short notice, subjects Funk to imminent risk of losing his security, and divests the heirs, who have only constructive notice, and many of whom may be infants, of title to a large and valuable tract of land, without any assurance that they will get an equivalent therefor, and without any good reason for so doing. There was no evidence to show that Tinder retained possession, as stated in argument by defendants' counsel; the fact being that Kelley is in possession as tenant to McReynolds.

The decree is manifestly to the prejudice of Funk and the heirs of McReynolds, and in no way subserves the purposes of justice. It should be reversed or so modified by this court as to protect the interests of the creditor and as far as possible the title of the heirs.

They should only be divested of title to real estate on the application of administrators, when they have complied with the statute and shown a clear necessity therefore in order to pay debts. The heirs of James McReynolds being unknown, we have not thought it best to join them as plaintiffs in error, but suppose that this court has power to protect their interest as well as Funk's, by a modification or reversal of the decree.

Mr. CHARLES WATTS, for the defendants in error.

When Brittenham assigned to James McReynolds the notes falling due April 1st, 1857 and 1858, McReynolds took the benefit of the mortgage, and was entitled to priority of payment out of the mortgage security. The sale of a part of the mortgaged premises, under the judgment obtained on the first note, was not a satisfaction of the mortgage indebtedness held by James McReynolds. This is the case only upon strict foreclosure, where the land is of equal value to the debt. *Vansant* v. *Allman et al.*, 23 Ill. 30.

The sheriff's deed to James McReynolds conveyed to him only Tinder's equity of redemption in the 640 acres of the mortgaged premises, and whether the incumbrance on the land held by James McReynolds is to be considered as subsisting or extinguished, depends on his intentions, express or implied, which are to be gathered from all the circumstances in the case.

"If no intention has been manifested, equity will consider the incumbrance as subsisting or extinguished, as may be most conducive to the interests of the party." *Campbell* v. *Carter*, 14 Ill. 290.

James McReynolds has not expressed his intentions, nor done any act to show his intentions, further than taking the equity of redemption by the sheriff's deed, and the assignment of six of the other notes.

None of the notes assigned to him have been surrendered or satisfied, but were held by him, and passed to the defendants in error as part of his personal estate. No memorandum was made by James McReynolds, showing his mortgage indebtedness satisfied or extinguished.

Tinder, the mortgagor, retained possession of the mortgaged premises, and on the 21st day of September, 1860, over a year after James McReynolds took his sheriff's deed, conveyed the same to Daniel Kelly.

It was manifestly to the interest of James McReynolds to keep up the charge on the land, otherwise he would let in all subsequent incumbrances.

Where the intention to extinguish the mortgage indebtedness is not plainly shown, equity will consider it as subsisting, where subsequent incumbrances would gain a priority if extinguished, for "it will be thence inferred, that the owner could not intend to divest himself of his priority over the subsequent incumbrances, and therefore that the charge shall subsist, separate from the estate, for his benefit." 3 Pow. on Mort. 1089 ; *Forbes* v. *Moffatt*, 18 Ves. Ch. 393.

In that case the master of the rolls says : " With regard to presumptive intention it was evidently most advantageous to John Moffitt that this mortgage should be kept on foot; for otherwise he would have given priority to the other mortgage, and all the debts of his brother. The reasonable presumption therefore is, that he would choose to keep the mortgage on foot. Where no intention is expressed, or the party is incapable of expressing any, I apprehend the court considers what is most advantageous to him." In that case Moffitt paid £5,000 on the subsequent

mortgage which was relied on by the real representatives as showing his intention to abandon the charge on the mortgaged premises of his own mortgage. But the master of the rolls says, that (had Moffitt intended that his mortgage no longer subsisted) "he might have entered some memorandum on the record, signifying that the other" (his mortgage) "no longer subsisted." That was regarded by the master as a circumstance which "weighs something in favor of the personal representatives."

That was a case between personal and real representatives of John Moffitt, deceased, decided since the case of *Macatta* v. *Murgatroyd* (1 P. Wms. 395), cited by plaintiff in error, as requiring a waiver of the equity of redemption. No waiver was made by Moffitt or his personal representatives.

James McReynolds could not have intended to satisfy his mortgage or he would have taken the equity of redemption to all of the mortgaged premises.

Had he intended to satisfy the mortgage he would have had Brittenham cancel the notes and satisfy the mortgage on record to the extent of the six notes at the time of taking the sheriff's deed, instead of assigning them to him, which carried with the assignment the benefit of the mortgage for those notes, for, as is said by the master of the rolls in *Forbes* v. *Moffitt*, "it is hardly to be supposed he could wish publicly to represent his estate as more heavily burthened than he really meant it to be."

The legal effect of the contract between Brittenham and James McReynolds, contained in the assignment, was, that McReynolds should have the benefit of the mortgage for the notes assigned him, which gave him the right to have his notes paid out of the mortgage security according to the order of time in which they fell due, and unless James McReynolds has done some act since then, which precludes his personal representatives, the charge should be considered as subsisting as against Brittenham and subsequent assignees of Brittenham.

The assignment of the two notes now held by plaintiff in error, was made by Brittenham after the last assignment made to McReynolds, which could give the plaintiff in error no

greater rights than Brittenham would have, under the contract between him and McReynolds, contained in the assignment.

The general tenor of all the authorities seems to be, that when the mortgagee acquires the equity of redemption and cancels the notes, he may still rely on the mortgage to protect his title.

The decree, requiring the payment of the note falling due in 1857, was properly rendered, as the note had never been paid by Tinder, the mortgagor, and the sale of a part of the mortgaged premises under the judgment rendered on the note, placed plaintiff in error in no worse condition than he would have been in, had James McReynolds held the note without taking judgment on it.

The general rule is, "He who seeks equity must do equity."

Plaintiff in error cannot complain of the order of the court below, requiring the amount of the first note falling due to be paid to the defendants in error, as administrators, for the separate answer of Allen McReynolds, one of the defendants in error, sets up his interest as one of the heirs of James McReynolds, deceased, and if the mortgage still subsists, that note was entitled to priority of payment over all others, and it can make no difference with plaintiff in error, whether the money is paid to the personal or real representatives of James McReynolds, deceased.

Neither can plaintiff in error complain of the court below granting the prayer of the cross-bill, for if the mortgage still subsists, and if the proper decree was not rendered, it should have been decreed that plaintiff in error have decree of foreclosure, upon redeeming from all the notes assigned to James McReynolds, which fell due before the notes held by plaintiff in error. The decree, requiring defendants in error to wait for the money, until the sale of the mortgaged premises, does plaintiff in error no wrong.

A party cannot assign as error, that which does him no wrong. *Thorn* v. *Watson et al.*, 5 Gilm. 27 ; *Arenz* v. *Riehl et al.*, 1 Scam. 340.

Mr. JUSTICE BECKWITH delivered the opinion of the court: ·

On the 1st of November, 1855, Asher W. Tinder made his ten promissory notes for $1,000 each, payable to John A. Brittenham or order, on the 1st day of April in the years from 1857 to 1866, inclusive, with interest annually in advance, and also executed a mortgage deed of several tracts of land to secure payment of the same. The first year's interest upon the notes was paid in advance. On the 14th of April, 1856, Brittenham sold and transferred to James McReynolds the notes falling due on the 1st day of April in the years 1857 and 1858. McReynolds sued Tinder, declaring upon the note due 1st April, 1857, and at the April Term, 1857, of the Circuit Court for Piatt county, recovered judgment thereon for $1,087$\frac{33}{100}$ damages and costs. Afterwards, McReynolds sued out an execution upon the judgment, and caused the same to be levied upon the premises mortgaged, excepting eleven acres thereof. The premises levied upon were sold by the sheriff to McReynolds, on the 13th of October, 1857, for the amount of the execution and costs. None of the lands sold were redeemed; and on the 29th August, 1859, the sheriff conveyed the same to McReynolds. On the 29th August, 1859, Brittenham sold and transferred to McReynolds the notes falling due on the 1st day of April in the years 1860, 1861, 1862, 1864, 1865 and 1866, which are now held by his administrators. In September, 1859, Brittenham recovered a judgment against Tinder for $504$\frac{23}{100}$, the balance then due on the note falling due 1st April, 1859, and on the 24th January, 1861, assigned this judgment and the note falling due 1st April, 1863, to the plaintiff in error. The sale of an equity of redemption upon execution, other than for the debt secured by mortgage upon the premises, vests the estate sold in the purchaser, subject to the payment of the mortgage debt. It is necessarily made for so much less than the property would have sold for had it been unincumbered. The debtor is thereby divested of property apparently sufficient to satisfy the indebtedness secured by the mortgage; and he has a right to demand its application upon the liability. The purchaser is not allowed to take and hold the entire interest in the land, since he purchased, and paid only the value of the equity of redemption. If

payment of the mortgage debt is enforced (under such circumstances) from other property of the mortgagor, he will be subrogated to all the rights of the mortgagee, so as to enable him to indemnify himself out of the mortgaged premises.

The application of these well settled rules prevents any injustice to the mortgagor, the mortgagee, or the purchaser. Where such a sale is made upon execution for the whole or a part of the mortgage debt, great difficulties occur in adjusting the rights of parties. In some instances such sales have been held to be void. *Goring's Executor* v. *Shreve*, 7 Dana, 64; *Swigest* v. *Thomas*, id. 220; *Bronson* v. *Robinson*, 4 B. Mon. 142; *Waller* v. *Tate*, id. 529; *Atkins* v. *Sawyer*, 1 Pick. 351; *Washburn* v. *Goodwin*, 17 Pick. 137; *Camp* v. *Coxe*, 1 Dev. and Bat. 52; *Powell* v. *Williams*, 14 Ala. 476; *Baldwin* v. *Jenkins*, 23 Miss. (1 Cush.), 206.

The law will not suffer a debtor to be divested of his property for the purpose, nominally, of discharging his liabilities, when the manner in which it is sought to be done nowise tends to accomplish that end. It provides appropriate modes for subjecting the property of debtors to the payment of their debts, and it is no hardship upon creditors to require them to pursue those modes. While justice requires that creditors shall have their just dues, it forbids unjust and unnecessarily oppressive modes of obtaining them. The laws of this State, regarding sales under foreclosure of mortgages, were designed to secure to mortgagors the value of their property over and above the mortgage debt, and a sale upon execution for the whole or a part of the same debt would defeat the policy of the law, and utterly destroy the value of an equity of redemption.

The interest of a mortgagor subject to a sale upon execution, is ascertained by deducting the amount of the mortgage debt from the value of his property and a sale of the residuary interest to discharge the debt so deducted would never give to the mortgagor the value of his property over and above the incumbrance. In the case under consideration, McReynolds did not pay anything for the equity of redemption conveyed to him. He acquired the value of the property over and above

the mortgage debt, by merely *canceling* a portion of the same. To illustrate: Property worth $5,000 may be mortgaged for only $1,000; now if the equity of redemption is exposed for sale, upon an execution, for the mortgage debt, and the mortgagee becomes the purchaser for $1,000, he would take the property for his debt and deprive the mortgagor of the benefits that might accrue to him if the property were sold in a proper manner to satisfy the indebtedness. But whatever effect the sale under the execution in favor of McReynolds had upon the rights of Tinder, inasmuch as he is now in court and does not question its validity, or justice, we are not called upon to interfere in his behalf. McReynolds, Brittenham, Tinder, or those claiming under them, have never questioned the validity of the sale; and we are not required to assert rights for parties which they do not assert for themselves. Considering, as we must, the sale to be a valid one, until its validity is controverted in some appropriate manner, we are of the opinion that McReynolds acquired the property subject to the payment of a *pro rata* share of so much of the mortgage debt, as the sale left unsatisfied. The law will not consider the note held by McReynolds, and which fell due April 1, 1848, and the six notes, subsequently acquired by him, extinguished. The whole of the property mortgaged was not sold under the execution in favor of McReynolds, and it was for his interest to keep the notes in force, to preserve his lien upon the residue of the property mortgaged.

There is no evidence of any intention on the part of McReynolds to cancel them, or to discharge his lien upon the residue of the property; and as no intention of that kind was manifested, equity will consider the notes as subsisting, or as extinguished, as may be most conducive to his interests. *Campbell* v. *Carter*, 14 Ill. 286.

The seven notes held by the representatives of McReynolds are a lien upon the mortgaged premises, as well as the judgment and note assigned to the plaintiff in error, and the holders of the same are entitled to a priority in their payment, according to the order of their maturity; the judgment in favor of Britten-

ham taking the place of the note upon which it was rendered. *Vansant* v. *Allmon*, 23 Ill. 30.

The judgment in favor of McReynolds was satisfied by his own act, and it is no longer a lien upon the premises. The persons claiming under McReynolds hold the equity of redemption acquired by him, in lieu of so much of the mortgage debt as was canceled. The position of these parties is one chosen by McReynolds, and so long as he and they abide by it, none of them can complain of the consequences. The property, after the liens thereon are discharged, belongs to them, and they have no right to retain Tinder's equity of redemption with its benefits, and receive that which was surrendered to him for it. The parties claiming under Tinder and McReynolds, respectively, are entitled to have the mortgaged property, if it should be more than sufficient to discharge the liens, exhausted for that purpose ratably, according to the value of the several parcels. McReynolds was under no obligation to entirely disincumber the land sold to Kelley ; nor was Tinder or Kelley under any obligation regarding them other than such as the law imposed upon them. Under such circumstances, if the property is more than sufficient to satisfy the liens, equity will apportion the incumbrance between the parties ratably, according to the value of the parcels they hold respectively. The decree of the court below is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*