## GEORGE ERLINGER ET AL.

## V.

## NICHOLAS BOUL.

1. PRACTICE IN CHANCERY—CROSS-BILL—WHEN NECESSARY.—When a decree on complainant's bill will not determine the litigation, a cross-bill is necessary. So where·defendants in proceedings for foreclosure set up a title derived from sheriff's sale, except as to the part set out as a homestead, it is error to decree that a sale under the foreclosure should first be made of the part set out as a homestead, without the filing of a cross-bill for that purpose.

2. MORTGAGE—INVERSE ORDER OF ALIENATION.—Although it is a general rule that where a mortgagor sells portions of the mortgaged premises and retains other portions, the latter shall first be taken to satisfy the mortgage, the rule does not apply to cases of a sale of the equity of redemption upon execution, other than for the debt secured by the mortgage.

ERROR to the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge presiding. Opinion filed August 13, 1880.

Mr. W. C. KUEFFNER, for plaintiffs in error; argued that on a decree *pro confesso*, the defendant may insist that the averments in the bill do not justify the decree, although he·cannot object to the sufficiency of the proof, and cited, DeLenn v. Neely, 71 Ill. 473; Gault v. Hoagland, 25 Ill. 266; Stephens v. Bichnell, 27 Ill. 444; Harmon v. Campbell, 30 Ill. 25.

The decree must be confined to the case presented by the pleadings: Berger v. Peterson, 78 Ill. 633.

Specific relief to a defendant, cannot be given on an answer; it must be sought by cross-bill: McConnel v. Smith, 23 Ill. 611; Iglehart v. Crane, 42 Ill. 261.

The purchaser at an execution sale, can only take and hold the equity of redemption: Funk v. McReynolds, 33 Ill. 481.

Mr. R. A. HALBERT, Mr. C. F. NOETLING and Mr. F. A. McCONAUGHY, for defendant in error; that where the equity of redemption in part of the premises has passed out of the mort-

gagor, the part remaining should first be charged with the debt, cited Niles v. Harmon, 80 Ill. 396; Mason v. Payne, Wilkin's Ch. 459; Cooper v. Bigley, 13 Mich. 474; James v. Brown, 11 Mich. 25; Caruthers v. Hall, 10 Mich. 40; McKinney v. Miller, 19 Mich. 142; Commercial Bank v. Reserve Bank, 11 Ohio, 444; Shannon v. Marcellis, 1 N. J. Ch. 413; Ayers v. Hustead, 15 Conn. 504; Jones v. Dow, 18 Wis. 241.

The fact that the specific relief prayed is not precisely given by the decree, is no objection where there is a prayer for general relief: Hopkins v. Snedaker, 71 Ill. 449; Vansant v. Allmon, 23 Ill. 30; Labadie v. Hewitt, 85 Ill. 344.

WALL, P. J.   This was a bill in chancery, filed by Boul, the defendant in error, against George Erlinger, and Anna Erlinger, his wife, and Maria Ambry and others, legatees and administratrix of John Ambry, deceased.  The bill alleges that Erlinger and wife executed to complainant a mortgage upon lots 13 and 14, in Sec. 25, T. 2, N. R. 9, in St. Clair Co. to secure payment of a note signed by said George Erlinger, of even date with the mortgage for $2,147; that the debt is due and unpaid; that Maria Ambry and the other representatives of John Ambry, deceased, have, or claim some interest in the premises, the precise nature of which is unknown, but that such interest, whatever it may be, is subject to plaintiff's mortgage, makes the Erlingers and Ambrys parties to the bill, and prays for a foreclosure of the mortgage.

The bill was taken as confessed against the Erlingers, for want of answer.   Answers were filed on behalf of the Ambrys alleging that John Ambry, deceased, in his life-time, and subsequent to the executing and recording of the mortgage, purchased at sheriff's sale, on execution against Erlinger all of said land, except twelve acres thereof, which was set off to Erlinger as his homestead, and that the property not having been redeemed, a sheriff's deed was executed to said Ambry, who afterwards died, and asks that in case a sale becomes necessary under said mortgage, the twelve acres so set off to Erlinger for his homestead may be sold first, and that the residue so acquired by Ambry may be sold only in the event,

the amount of the debt is not fully made by the sale of the twelve acres.

A decree passed finding the allegations of the bill to be true; that the amount due on the mortgage debt is $2,629.49; that the equity of redemption in the premises, except the twelve acres, was acquired by John Ambry, now dead, by sheriff's deed dated, etc., and that said equity of redemption is now in Maria Ambry and the other legatees of said John Ambry, and orders that if the said debt be not paid, etc., the premises mortgaged be sold to satisfy the same; the twelve acres set off as the homestead to be first sold, and in case the same shall not realize enough to pay the amount due, then the remaining portion shall be sold. Erlinger brings the record here and assigns errors thereon.

Two objections are urged to the decree: First, that it was erroneous to order the twelve acres to be first sold, there being no allegation in the bill showing any facts to authorize such an order and there being no cross-bill. Second, that the matters alleged in the answer of Ambry's heirs and found in the decree are not sufficient to warrant the order. Assuming that upon the facts alleged in the answer of the Ambrys, it was proper to make this order, we are of opinion that a cross-bill was necessary. There is no allegation in the bill upon which the decree can rest, and the facts set up by Ambry's heirs should have been made the subject of a cross-bill, so that they might have been contested by Erlinger if he had desired, and in this way a new controversy which was not between the complainants and defendants, but obviously between the defendants, could have been adjusted.

When a decree on complainant's bill will not determine the litigation, a cross-bill is necessary. This may arise when cross-relief is required by defendants, or from the existence of litigation between the defendants. Adams' Equity, 40–23; Story's Eq. Pl. 392.

And generally, whenever it is necessary to bring all the equities of all the parties before the court, so that complete justice may be done the defendants, or a part of them, by granting affirmative relief as well as by granting the complainant the

relief sought by his bill, it is necessary to file a cross-bill. Ballance v. Underhill, 3 Scam. 453; Hurd v. Case, 32 Ill. 45; Titsworth v. Stout, 49 Ill. 78; Price v. Lowery, 65 Ill. 386. Iglehart v. Crane, 42 Ill. 261, was a case where the question arose as to the right of subsequent purchasers from the mortgagor of parts of the mortgaged premises, and it was held that the different parcels are to be subjected to the payment of the mortgage in the inverse order of their alienation; but the complainant had released a part of the premises primarily liable, and he was held to have thereby released *pro tanto* the portion secondarily liable. It was urged that this point should have been presented by cross-bill, and the court said (on page 271), that if the complainant had executed no releases, and the appellants had sought merely to procure a decree directing the lots last conveyed to be first sold, it would doubtless have been necessary to file a cross-bill, making their co-defendants partties, as they would have been asking a decree to the prejudice of their co-defendants.

Counsel insist that this remark of the court was *obiter*, and not necessary to a decision of the question before the court, and urge upon us the case of Caruthers v. Hall, 10 Mich. 40, where it was said that a cross-bill was not necessary.

We think the view expressed in 42, Ill. *supra*, is hardly to be regarded as mere dictum, and that whether it was absolutely necessary to the decision of the point before the court, it was quite pertinent, and is sound law. The relief sought here is on behalf of one defendant, at the expense of another, and is upon a state of facts not alleged in the bill. Suppose Erlinger had learned the contents of this answer before the rendition of the final decree, and had desired to test the question of law arising thereon or had desired to controvert the facts alleged, in what appropriate way could he have done so?

He had not answered the original bill, having no defense thereto, and not objecting to the relief therein prayed, and his default, and a decree *pro confesso* had passed against him. The complainant may have been indifferent, and not inclined to take issue upon the answer. So that, by the practice here adopted, a decree materially affecting the rights of Erlinger

was entered in a proceeding to which he was practically not a party, and upon pleadings to which he was not asked to respond, and which were determined wholly between other persons.

It would seem that the bare statement of the case would sufficiently show the importance and necessity of a cross-bill to which Erlinger might answer or demur, making such issues of law or fact as he might deem proper for his protection.

But the grave question in the case is whether the decree was warranted by the matters alleged in the answer, if set up by proper pleadings. There can be no question that in this and most of the other states, as well as in England, the rule is well settled that where a mortgagor sells a portion of the mortgaged premises, and retains a portion, the grantee will ordinarily be protected against the mortgagee by requiring that the part retained by the mortgagor shall be first sold, and where the mortgagor has sold successive parcels at different times the parcels sold will be subjected to the mortgage in the inverse order of their alienation. Iglehart v. Crane, 42 Ill. 265; Niles v. Harmon, 80 Ill. 392. The rule rests chiefly upon the ground that where one who is bound to pay a mortgage confers upon others a portion of the property, retaining a portion for himself, it is unjust that his grantees should be deprived of their rights so long as he has property covered by the mortgage out of which the debt could be made. In other words, his debt should be paid out of his own estate rather than out of the estate of his grantee. Any other rule would enable him to enjoy for his own benefit that which he has once vested in another, and, in a measure to recall his own grant and retain the consideration he had received therefor.

The rule cannot, therefore, depend on the existence or non-existence of covenants of warranty. It depends on whether, in making a disposition of his property, he has or has not seen fit to charge it primarily with the payment of the incumbrance. It is the common inference that a man owing a debt for which his own property remains liable, must have expected to pay it out of his own means, unless he has bargained to the contrary. Cooper v. Bigley, 13 Mich. 474. Therefore,

Erlinger v. Boul.

the purchaser from a mortgagor may well expect that the mort-
gagor will take care of the incumbrance to the extent of first
appropriating the portion retained to that purpose, and when
the mortgagee seeks a foreclosure, as he has an equal lien up-
on the whole and the purchaser can look for indemnity only
to the part retained by the mortgagor, that part will be first
applied to the payment of the debt. This is the course which
the debtor is presumed to have intended, since to do other-
wise would enable him, as was said in the Michigan case, *su-
pra*, to enjoy for his own benefit that which he has once vested
in another, and thus, in a measure, to recall his own grant and
retain what he had received therefor. But do these considera-
tions apply where his property is sold under execution ?
Here the proceedings are *in invitum;* he makes no grant; he
does no act from which it can be inferred that he will use the
remainder of the mortgaged property in the payment of the
whole debt. There is nothing from which his intentions can
be presumed, and upon which a court of chancery can raise an
equity in favor of the purchaser. The latter acquired simply
the equity of redemption under circumstances imposing no
such equitable duty upon the mortgagor, and by obtaining a
deed therefor cuts off the mortgagor's power of redeeming
from the mortgage, and this is done without the consent or ac-
quiescence of the mortgagor.

. It is true the debt for which the judgment was rendered is
discharged, but it is to be presumed, that the property was pur-
chased at no more than its value, subject to the lien of the
mortgage. In the case of of Funk v. McReynolds, 33 Ill. 481,
it was said by the Supreme Court: "The sale of an equity of
redemption upon execution, other than for the debt secured
by mortgage upon the premises, vests the estate sold in the
purchaser, subject to the payment of the mortgage debt. It is
necessarily made for so much less than the property would
have sold for, had it not been incumbered, the debtor is
thereby divested of property, apparently sufficient to satisfy
the indebtedness secured by the mortgage, and he has a right
to demand its application upon the liability. The purchaser is not
allowed to take and hold the entire interest in the land, since he

purchased and paid only the value of the equity of redemption. If payment of the mortgage debt is enforced (under such circumstances) from other property of the mortgagor, he will be subrogated to all the rights of the mortgagee, so as to enable him to indemnify himself out of the mortgaged premises." The principle of *caveat emptor* applies in such sales and the execution debtor is held to no warranty, nor is he under any legal or moral obligation to redeem from the sale, or to do any other act for the protection of the purchaser. Finley v. Thayer, 42 Ill., 460; Roberts, v. Hughes, 81 Ill., 130.

He is not consulted; he need not consent to the proceeding, and he is powerless to prevent it. Hence there is no act of his from which any intention can be presumed.

We have seen that the rule applicable when he voluntarily conveys a part of the premises, rests upon a presumption arising from his act, and until the contrary appears it will be presumed that he intended to pay the debt out of what he retained; and as he is exercising his own will and dominion over the property, it is reasonable to suppose that he has received such price, and otherwise so ordered his affairs as to enable him to do so; at all events his course is voluntary, and there is "persuasive equity" in the presumption that he will not ask his grantee—from whom he has received a satisfactory consideration—to pay his debt.

This presumption fails of course, when the contrary appears. He may in the deed charge the parcel conveyed with a part or all of the burden; and no doubt the real purpose may be shown by other circumstances; but when the alienation is involuntary, the case is essentially different. He had placed the incumbrance upon the whole property, thereby in express terms binding it all primarily for the whole debt, each parcel as much bound as the other; and until a different intention can be inferred from some other act, the obligation must be so enforced. Courts can not make another contract for him, but can only require the performance of such a contract as he has made for himself, according to the express terms thereof, or such terms as may be implied from his acts in the premises. How, then, can it be said that by the mere act of the law, and

without his act, consent or acquiescence, the terms of his contract can thus be modified? The result would be, that though he was the owner of the property and had absolute dominion over it, and had charged it all with the debt, yet the law will make another provision for him, and will hold one parcel to pay the whole debt, though he made no such contract, and has done no act from which such an intention can be inferred.

The decree is reversed and the cause remanded.

Reversed and remanded.